# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATRICIA DELORENZO,<br>          **Plaintiff,**<br><br>v.<br><br>**HP ENTERPRISE SERVICES, LLC,** *et al.*,<br>          **Defendants.** | **Case No. 1:15-cv-0216-RMC** |
| **JAMES B. FRASIER et al.,**<br>          **Plaintiffs,**<br><br>v.<br><br>**HP ENTERPRISE SERVICES, LLC,** *et al.*,<br>          **Defendants.** | **Case No. 1:15-cv-1492-RMC** |
| **JOHN EDWARD PROCTOR,**<br>          **Plaintiff,**<br><br>v.<br><br>**HP ENTERPRISE SERVICES, LLC,** *et al.*,<br>          **Defendants.** | **Case No. 1:15-cv-1494-RMC** |
| **PRISCILLA A. HALMON-DANIELS,**<br>          **Plaintiff,**<br><br>v.<br><br>**THE EXPERTS, INC.,** *et al.*,<br>          **Defendants.** | **Case No. 1:15-cv-1501-RMC** |

**MICHELLE KOHLER,**
      **Plaintiff,**

**v.**                                         **Case No. 1:15-cv-1636-RMC**

**HP ENTERPRISE SERVICES, LLC,** *et al.*,
      **Defendants.**

---

**TRACEY RIDGELL,**
      **Plaintiff,**

**v.**                                         **Case No. 1:15-cv-1637-RMC**

**HP ENTERPRISE SERVICES, LLC,** *et al.*,
      **Defendants.**

---

**ERIN ZAGAMI,**
      **Plaintiff,**

**v.**                                         **Case No. 1:15-cv-1638-RMC**

**HP ENTERPRISE SERVICES, LLC,** *et al.*,
      **Defendants.**

---

**JANE MAE MCCULLOUGH,**
      **Plaintiff,**

**v.**                                         **Case No. 1:15-cv-1639-RMC**

**HP ENTERPRISE SERVICES, LLC,** *et al.*,
      **Defendants.**

---

**JENNIFER JACOBS,**
      **Plaintiff,**

**v.**                                         **Case No. 1:15-cv-2242-RMC**

**HP ENTERPRISE SERVICES, LLC,** *et al.*,
      **Defendants.**

2

**MEMORANDUM OPINION ON MOTION FOR RECONSIDERATION OR, IN THE
ALTERNATIVE, CERTIFICATION FOR INTERLOCUTORY APPEAL**

These nine cases all arise from the mass shooting at the Navy Yard in

Washington, D.C., on September 16, 2013.  The crimes were committed by Aaron Alexis, who

was a computer technician and a civilian employee of Defendant The Experts, Inc.  The Experts

was a subcontractor to Defendant HP Enterprise Services, LLC ("HPES"), which held the prime

contract with the Navy for information technology services.  Twelve people died and four were

injured by Mr. Alexis on September 16th.  Plaintiffs[1] are the personal representatives of the

estates (or surviving family members or heirs) of seven decedents, a survivor seriously injured

by Mr. Alexis, and a survivor who was a witness to the carnage.  All Defendants filed motions to

dismiss and, on September 15, 2016, the Court issued an Opinion and Order in each case, Op.

[Dkt. 132]; Order [Dkt. 133][2], granting in part and denying in part those motions.  The Court

dismissed all claims "with the exception of: (1) Plaintiffs' claims against HPES and The Experts

for negligent retention and supervision of Mr. Alexis; and (2) the claims of Plaintiffs Kohler,

Ridgell, Zagami, and Jacobs against HPES for negligent retention and supervision of The

Experts."  Op. at 81.

HPES moves the Court to reconsider its finding that Plaintiffs adequately alleged

these two claims.  HPES Mot. for Recons. [Dkt. 137].  In the alternative, HPES seeks

---

[1] The Plaintiffs are:  Patricia Delorenzo, Case No. 1:15-cv-0216; James B. Frasier, Case No.
1:15-cv-1492; John Edward Proctor, Case No. 1:15-cv-1494; Priscilla A. Halmon-Daniels, Case
No. 1:15-cv-1501; Michelle Kohler, Case No. 1:15-cv-1636; Tracey Ridgell, Case No. 1:15-cv-
1637; Erin Zagami, Case No. 1:15-cv-1638; Jane Mae McCullough, Case No. 1:15-cv-1639; and
Jennifer Jacobs, Case No. 1:15-cv-2242.  These cases have not been formally consolidated at this
time, but the Court addressed common legal issues raised by Defendants' motions to dismiss in a
single Opinion and separate Orders in each docket.
[2] When citing to a document appearing in the docket sheets of all plaintiffs, this Opinion will, for
the sake of clarity, only cite to the docket number of *Patricia Delorenzo v. HP Enterprise
Services, LLC*, Case No. 1:15-cv-0216.

certification for immediate interlocutory review of the Court's holding that the "heightened

foreseeability" standard applied by District of Columbia courts for evaluating liability for an

intervening crime by a third person does not apply to allegations of negligent retention and

supervision resulting in a crime by a third person.  The Experts joins in the request for

certification of the legal standard for immediate review by the D.C. Circuit.  All Plaintiffs oppose

both aspects of the motion.

## I. RECONSIDERATION

Federal Rule of Civil Procedure 54(b) governs a motion for reconsideration.  Rule

54(b) provides that "any order or other decision, however designated, that adjudicates fewer than

all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any

time before the entry of judgment adjudicating all the claims and all the parties' rights and

liabilities."  Relief under Rule 54(b) is available "as justice requires."  *DL v. Dist. of Columbia*,

274 F.R.D. 320, 324 (D.D.C. 2011).  Courts examine the relevant circumstances to determine

"what justice requires."  *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005).  Relevant

circumstances include whether the court has "'patently misunderstood a party, has made a

decision outside the adversarial issues presented to the Court by the parties, has made an error

not of reasoning, but of apprehension, or where a controlling or significant change in the law or

facts has occurred since the submission of the issue to the Court.'"  *Ficken v. Golden*, 696 F.

Supp. 2d 21, 35 (D.D.C. 2010) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).

A court's discretion under Rule 54(b) is "subject to the caveat that, where litigants have once

battled for the court's decision, they should neither be required, nor without good reason

permitted, to battle for it again."  *Singh v. The George Washington Univ.*, 383 F. Supp. 2d 99,

101 (D.D.C. 2005).

HPES argues, in part, that "the Opinion's conclusion that Plaintiffs stated a claim for negligent retention and supervision of Mr. Alexis relies on the mistaken assertion that HPES did not contest Plaintiffs' allegations with respect to the events of August 2013." HPES Mot. for Recons. ¶ 4. HPES takes issue with footnote 27 in the Opinion, which stated, "Neither HPES nor The Experts contest the sufficiency of the allegations with respect to what they knew or should have known about the series of events in August 2013." Op. at 46 n.27. HPES notes that it itemized the Plaintiffs' allegations about what HPES knew about Mr. Alexis prior to the shooting on pages 6 and 7 of its Motion to Dismiss, *see* Dkt. 107, and that none of those listed allegations includes the four allegations identified by the Court "that combined with the symptoms of mental illness exhibited by Mr. Alexis during August 4–7, 2013, barely push Plaintiffs' claims of negligent retention and supervision over the plausibility threshold of *Twombly*." Op. at 45.

The Court will grant reconsideration in part and strike footnote 27 from the Opinion. However, HPES's argument does not support reconsideration of the Court's underlying legal assessment of the motion to dismiss. Therefore, the Court will not modify the Opinion's conclusion that Plaintiffs have sufficiently pled claims for potential HPES liability under DC tort law, both for negligent retention and supervision of Mr. Alexis, as alleged in all

Complaints, and of The Experts, as alleged in the Complaints of Plaintiffs Kohler, Ridgell, Zagami, and Jacobs.[3]

HPES relied on *Bailey v. District of Columbia* and similar cases to argue that under D.C. law, "[w]here an injury is caused by the intervening criminal act of a third party, this court has repeatedly held that liability depends upon a more heightened showing of foreseeability than would be required if the act was merely negligent." 668 A.2d 817, 819 (D.C. 1995); HPES Mot. to Dismiss 10–14. The Court agreed with this HPES argument and on that basis dismissed all of Plaintiffs' claims except those of negligent retention and supervision. As to the latter claims, for reasons explained in the Opinion, the Court applied the District of Columbia's lower standard of foreseeability for negligent retention and supervision, which requires a plaintiff to "'show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.'" Op. at 26 (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985)).

HPES insists that the Opinion rests "entirely" on the four allegations identified in the Opinion when it found that Plaintiffs sufficiently met the applicable pleading standard for negligent retention or supervision. *See* HPES Mem. in Support of Mot. for Recons. [Dkt. 137] at

---

[3]  HPES complains that it sought dismissal of all claims against it, which necessarily included the claim that it negligently retained or supervised The Experts. It notes that Plaintiffs Kohler, Ridgell, Zagami and Jacobs agree that this claim is based on the same facts as the claim of negligent supervision or retention of Mr. Alexis and urges the Court not to penalize it for failing to address the allegation of negligence vis-à-vis The Experts because its motion sought dismissal of all claims. Plaintiffs can base two separate legal claims on the same set of facts, as they clearly did in their Complaints. HPES just as evidently failed to contest the claim of negligence in its retention or supervision of The Experts, as differentiated from Mr. Alexis. At this point, there is no reason to dismiss that claim.

3.  The Opinion did not state that the enumerated list constituted the "entire" universe of relevant allegations; it is critical in this regard to appreciate that the pertinent time period of Defendants' knowledge is not merely August 4 to 7 in 2013, when Mr. Alexis experienced an episode of mental instability.  Rather, Plaintiffs complain that Mr. Alexis entered the Navy Yard on September 16, 2013, under the auspices of his employment with The Experts and HPES.[4]  The stated allegations do not address this entire period.  According to HPES's own motion to dismiss, the Plaintiffs have alleged without contradiction that (1) HPES was in communication with The Experts about Mr. Alexis's health issues and knew that he "would be removed from the Newport project team"; (2) the HPES second shift supervisor was present generally throughout the incident in Newport, spoke directly to Mr. Alexis about his fears and delusions in Norfolk and Newport, and spoke with both HPES and The Experts supervisory or managerial staff about him; and (3) Mr. Alexis returned to work the following week without any medical attention or counseling and worked at four different project sites between August 12 and September 6, 2013. HPES Mot. to Dismiss 6–8.  When strange incidents could give rise to an inference that an employee behaved in a "dangerous or otherwise incompetent manner," *see Giles*, 487 A.2d at 613; and supervisors had specific knowledge of those incidents, and there were discussions between supervisors and managers about those incidents, it cannot be determined on a motion to

---

[4] HPES expressly treated Mr. Alexis as its employee for purposes of its motion to dismiss but asserted at oral argument on the motion for reconsideration that it would contest that such a relationship existed.  Without clarity as to whether HPES and The Experts were dual employers as to Mr. Alexis, it cannot be determined whether HPES had actual or constructive knowledge of additional facts.  On a motion to dismiss, a court "accept[s] all the well-pleaded factual allegations of the complaint as true and draw[s] all reasonable inferences from those allegations in the plaintiff's favor."  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

dismiss whether HPES knew or should have known all the facts developed by the Experts. HPES has given the Court no reason to disturb its original ruling in this regard.

The contacts between the prime contractor and its subcontractor in the relevant and expanded time frame are not clear.  There has been no discovery on such contacts, if any, between August 7 and September 15, 2013 concerning Mr. Alexis or on The Experts' internal analyses or on the Defendants' working arrangements.  Because the Court has determined that "heightened foreseeability" is not the standard to be applied to Plaintiffs' allegations of negligent retention and supervision, and despite its cautions that an incident of paranoia and mental delusions cannot, alone, predict future violent conduct, it is necessary to develop a complete record on which summary judgment might be decided and/or to prepare for trial.

## II. INTERLOCUTORY APPEAL

In the alternative, HPES and The Experts ask the Court to certify the Orders for interlocutory review under 28 U.S.C. § 1292(b).  A district court has discretion to certify a non-final order for interlocutory review under § 1292(b), which grants federal courts discretion to certify a non-final order for interlocutory review when the Court determines that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  A controlling question of law "is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources."  *Judicial Watch Inc. v. Nat'l Energy Policy Dev. Grp.,* 233 F. Supp. 2d 16, 19 (D.D.C. 2002).

HPES and The Experts move for certification as to "whether D.C.'s heightened foreseeability standard applies to Plaintiffs' only remaining claims for negligent retention and

supervision." HPES Mot. for Recons. ¶ 5. Further, HPES suggests that the Court and parties usefully use the 60-90 days that HPES states that it normally takes the D.C. Circuit to decide whether to grant an interlocutory appeal by completing the anticipated motions practice (motion to dismiss/opposition/reply) for six new related cases that have been filed concerning the Navy Yard shooting since the Opinion issued.[5] Plaintiffs oppose and counsel for the Plaintiffs in the new cases committed themselves to prompt discovery with all other Plaintiffs so that the matters could proceed apace.

HPES strenuously disagrees that D.C. law applies a lower standard of foreseeability for claims of negligent retention and supervision than for other claims involving intervening criminal acts, and this disagreement forms the basis for its request for interlocutory review. In voicing this disagreement, as is its right, HPES relies on its prior arguments about the state of D.C. law upon which the Court has already ruled. These arguments are unavailing: While it would be fair to characterize D.C.'s treatment of foreseeability in negligent retention and supervision cases as unusual and difficult to explain, the long line of D.C. Court of Appeals cases on the subject make clear that the rule is not novel, lacking precedent, an issue of first impression, or otherwise extraordinary. *See Comm. on Oversight & Gov't Reform, United States House of Representatives v. Holder*, Case No. 1:12-cv-1332, 2013 WL 11241275, at *2 (D.D.C. Nov. 18, 2013) (declining to certify interlocutory appeal because the "case did not present

---

[5] These cases are: *Boyd v. HP Enterprise Services, LLC*, Case No. 1:16-cv-2037; *Lawson v. HP Enterprise Services, LLC*, Case No. 1:16-cv-2038; *Jograj v. HP Enterprise Services, LLC*, Case No. 1:16-cv-1846; *Parker v. HP Enterprise Services, LLC*, Case No. 1:16-cv-1847; *Stultz v. HP Enterprise Services, LLC*, Case No. 1:16-cv-1848; *Levitas v. HP Enterprise Services, LLC*, Case No. 1:16-cv-1849. Each of these cases is now before the Court.

a question of first impression, and the defense has failed to persuade the Court that similar extraordinary circumstances pertain").

HPES argues that a case need not be "extraordinary" to warrant interlocutory review, citing *Johnson v. WMATA*, 790 F. Supp. 1174 (D.D.C. 1991) (certifying question of last clear chance standard); *Kennedy v. District of Columbia*, 145 F. Supp. 3d 46 (D.D.C. 2015) (certifying question of whether Americans with Disabilities Act[6] claim was properly dismissed from suit that would otherwise proceed on discrimination claims); *Howard v. Office of Chief Admin. Officer of the U.S. House of Representatives*, 840 F. Supp. 2d 52 (D.D.C. 2012) (certifying question of whether termination claim based on Congressional Accountability Act was properly dismissed from suit that would otherwise proceed on discrimination claims where dismissal was based on a plurality opinion that showed no consensus in Circuit).  Describing these cases respectively as merely a "single-victim negligence action," and two "employment dispute[s]," HPES Reply [Dkt. 141] at 4, HPES overlooks the procedural and substantive quagmires those cases presented.  For instance, *Johnson v. WMATA* sounds as if it is similar to the instant matter but it is not.  The late Judge Louis Oberdorfer of this Court certified the question of last clear chance because the D.C. Circuit had issued two conflicting opinions on the issue, including a prior reversal and remand in *Johnson*, which the Circuit then ignored in a subsequent case, in which it appeared to agree with Judge Oberdorfer's original opinion.  790 F. Supp. at 1176.

None of these cases speaks to the present set of issues.  Of course, as HPES argues, the Court could certify its Orders even if it "believes that its conclusions are correct."  *Al*

_____

[6] 42 U.S.C. § 12101 *et seq.*

*Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55 (D.D.C. 2009) (question of jurisdiction over alien petitions for habeas corpus from detention at Bagram Air Field in Afghanistan); *see also APCC Servs., Inc. v. Sprint Communications Co.*, 297 F. Supp. 2d 90, 96 (D.D.C. 2003) (questions of standing and whether private right of action existed); *In re Vitamins Antitrust Litig.*, Case No. No. 99-cv-1285 2000 WL 33142129, at *2 (D.D.C. Nov. 22, 2000) (question of whether discovery from foreign defendants should proceed under the Hague Convention or federal rules, discovery continued under federal rules during interlocutory appeal).

However, the D.C. Court of Appeals has applied the standard articulated in *Giles v. Shell Oil Corp.* to negligent retention and supervision claims for 30 years. 487 A.2d at 613; *see also Phelan v. City of Mount Rainier*, 805 A.2d 930, 932–33 (D.C. 2002) (applying *Giles* standard). It has had multiple opportunities to revise or disavow that standard throughout that time period, and has chosen not to do so. HPES invites this Court to conflate the long-standing with the unclear, which the Court declines.

Additionally, and critically, an immediate appeal could be very lengthy—especially if the Circuit sought the opinion of the D.C Court of Appeals—and delay resolution of these cases on the merits for years. It is not at all clear that Plaintiffs have advanced a winning case for negligent retention and supervision, but it is clear that they are now entitled to limited discovery. Discovery will be cabined because formal investigations of these events already exist and are widely quoted and relied upon by Plaintiffs. It is entirely possible, if not likely, that the discovery period on liability will conclude in the time it would take to resolve an interlocutory appeal. In this respect, it would be much more efficient and cost-effective to reach a merits determination on liability before any appeal.

The parties briefed and the Court decided multiple claims by Plaintiffs against Defendants, leaving only one outstanding claim against The Experts and two against HPES. HPES strongly disagrees.  The disagreement with HPES to that result does not support interlocutory review.

## CONCLUSION

For the reasons stated herein and at the motions hearing, the Court will grant in part and deny in part HPES's Motion for Reconsideration, Dkt. 137, and will order footnote 27 struck from the Opinion.  Further, the Court will deny HPES's Motion, joined by The Experts, to Certify Orders for Interlocutory Appeal.  A memorializing order accompanies this memorandum opinion.


Date: October 31, 2016


_____/s/_____
ROSEMARY M. COLLYER
United States District Judge